UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| _____ | |
| RENEE COLEMAN ) | CIVIL ACTION NO. |
|     Plaintiff ) | |
| ) | |
| v. ) | PLAINTIFF DEMANDS A |
| ) | TRIAL BY JURY |
| APPLE AUTOMOTIVE LLC ) | |
|     Defendant ) | |
| _____) | MARCH 7, 2016 |

## COMPLAINT

### I.  INTRODUCTION

1.     This is an action brought by a consumer against an automobile dealership

for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the

Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et*

*seq.*, and for breach of the implied warranty of merchantability under the Magnuson-

Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. §§ 2301 *et seq.,* and Article 2 of the

Uniform Commercial Code, Conn. Gen. Stat. §§ 42a-2-101 *et seq.* ("UCC").

### II.  PARTIES

2.     Plaintiff Renee Coleman ("Coleman") is a consumer residing in West Haven,

Connecticut.

3.     Defendant, Apple Automotive LLC ("Apple Auto"), is a Connecticut limited

liability company that operates an automobile dealership in Wallingford, Connecticut.

### III.   JURISDICTION

4.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640(E)

and Fed. R. Civ. P. 18(a).

5.    This Court has jurisdiction over Apple Auto because it is located in Connecticut and organized under the laws of the state of Connecticut.

6.    Venue in this Court is proper because the transaction alleged herein occurred in this state.

## IV.    FACTUAL ALLEGATIONS

7.    In May, 2014, Plaintiff went to Apple Auto with the intention of trading in her 2009 Ford Taurus towards the purchase of an SUV vehicle with all-wheel drive (AWD) or four-wheel drive (4WD) because she wanted a vehicle that drove better in the snow.

8.    Apple Auto told Coleman that they did not have any AWD or 4WD vehicles for sale, and they steered her towards a 2012 Chevrolet Impala (the "Impala").

9.    Apple Auto told Coleman that the Impala had just come in and it was a good car.

10.    Apple Auto told Plaintiff that she could return to the dealership after six months and trade in the Impala for an SUV with AWD or 4WD.

11.    Plaintiff believed Apple Auto and, in large part based upon that representation, she decided to purchase the Impala.

12.    The salesman at Apple Auto, Frank, told Plaintiff that she would not have to pay a down payment.

13.    Apple Auto prepared a Retail Purchase Order and Retail Installment Contract (the "First Contract").

14.    The First Contract listed a total sale price of $17,901.00, including $642.56 in sales tax.

15.   The First Contract listed a cash down payment of $1,000, even though Plaintiff paid only $500 down, and $500 of the stated cash down payment was false.

16.   The First Contract provided for an amount financed of $17,640.00, and 75 monthly payments of $361.05 commencing July 1, 2014.

17.   Plaintiff alleges that the actual value of the Impala was less than the NADA Retail Value, because it was a former rental car, and former rental vehicles have a lower value than other comparable vehicles.

18.   Apple Auto knew that the Impala was a former rental vehicle but misrepresented that history to Plaintiff by providing Plaintiff with a Retail Purchase Order which left unmarked the box that would indicate that the Impala was a former rental.

19.   Although the purchase order and the Contract reflected a stated cash price of $17,258.44, the effective cash price of the Impala, once the false $500 down payment is subtracted, was only $16,758.44.

20.   The sales tax in the transaction was calculated based upon the stated cash price of $17,258.44, resulting in an increase to the sales tax of $31.75.

21.   In October, 2015, Plaintiff was having difficulty making the monthly car payments, and because she still wanted an AWD or 4WD SUV, she went to a Chevrolet dealership in the hopes of trading the Impala.

22.   The Chevrolet dealership provided Plaintiff with an AutoCheck report that indicated the Impala had previously been sold at auction with frame/unibody damage. The Chevrolet dealership would not accept the Impala in trade because of the frame damage, and it suggested that Plaintiff return the Impala to Apple Auto.

23.   Plaintiff returned to Apple Auto and met with a salesperson named Chick. Plaintiff saw a Hyundai Tucson SUV on Apple Auto's lot and expressed interest in the SUV.

24.   Chick told Coleman that she would not qualify for the Hyundai because she was way under water (i.e., she owed more than the outstanding contract balance) on the Impala, and Apple Auto could not "bury this kind of money" in the purchase of the Hyundai.

25.   Chick steered Plaintiff to a used 2014 Nissan Murano (the "Murano") and told her that the Murano was the only vehicle for which she could obtain credit approval.

26.   The Murano had a sticker price on it that reflected a purchase price of approximately $25,000.

27.   Plaintiff wanted to trade in the Impala, and she believed Apple Auto's representations that she could only purchase the Murano, so she agreed to purchase the Nissan.

28.   Apple Auto prepared a Purchase Order and Retail Installment Contract (the "Second Contract") that utilized a cash price of $31,965.70.

29.   The Second Contract provided for a trade-in allowance of $15,316.00 for the Impala and also listed a cash down payment of $1,000, even though Plaintiff did not pay a cash down payment.

30.   The Second Contract provided for an amount financed of $32,800 and 72 monthly payments of $734.49 commencing on November 26, 2015.

31.   Plaintiff told Apple that she was concerned that she could not afford payments that high, and Apple Auto falsely and deceptively told her that she could

4

return to the dealership after six months refinance the contract to lower the monthly payments to approximately $500.

32.   This was a false and deceptive statement, because Plaintiff would owe significantly more than $5,000 in excess of the Murano's value after six months, and Apple Auto knew that the statement was false.

33.   The Second Contract was assigned to Santander Consumer USA Inc. ("Santander").

34.   Although the Purchase Order and the Contract reflected a stated cash price of $31,965.70, the effective cash price of the Vehicle, once the false down payment is subtracted, was only $30,956.70.

35.   The sales tax was calculated based upon the stated cash price of $31,956.70, resulting in an increase to the sales tax of $63.50.

36.   Additionally, on information and belief, Apple Auto provided false information to Santander regarding the optional equipment that was included on the Murano in order to deceive Santander into believing that the Murano was worth more than its actual value.  Plaintiff bases this allegation upon the frequency of this practice, known as "powerbooking", in the automotive industry and upon the fact that the Murano was sold at an effective cash price of $30,956.70 even though it had an NADA Retail Value of only approximately $22,250.

## V.  CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT - SECOND CONTRACT

42.   Apple Auto violated TILA in connection with the Second Contract by listing a false down payment of $1,000 on the contract.

43.    Although the Second Contract reflected a stated cash price of $31,965.70, the effective cash price of the Vehicle, once the false down payment is subtracted, was only $30,956.70.

44.    The increased sales tax attributable to the false down payment would not have been charged in a comparable cash transaction, and it should have been disclosed as a finance charge instead of included as part of the amount financed.

45.    Apple Auto is liable to Plaintiff for actual damages in the amount of the excess sales tax plus statutory damages of $2,000 for the TILA violation in the First Contract.

### B.   BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

46.    The sale of the Impala from Apple Auto to Plaintiff was subject to the implied warranty of merchantability under Article 2 of the Uniform Commercial Code.

47.    The Vehicle is a consumer product as that term is defined in § 2301(1) of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312.

48.    A warranty that the Vehicle was merchantable at the time of sale was implied in the contract by operation of Conn. Gen. Stat. § 42a-2-314.

49.    Apple Auto breached the implied warranty of merchantability because the Vehicle was not in merchantable condition due to its structural deficiencies and it would not pass in trade without objection because it was not fit for the ordinary purposes for a similar vehicle, or both.

50.    Apple Auto is unable to cure the breach of implied warranty of merchantability.

51.   Apple Auto's breach of the implied warranty of merchantability was tortious in nature, in bad faith, were wanton and malicious, outrageous, and was undertaken with bad motive and with a reckless indifference to Plaintiff's interests and the injury that she sustained.

52.   As a result of the above-described actions, Apple Auto is liable to Plaintiff for her damages, including common law punitive damages, which are estimated to exceed $50,000, and attorney's fees and costs.

## C. CONNECTICUT UNFAIR TRADE PRACTICES ACT

53.   Apple Auto violated CUTPA in the following ways:

   a.  Its inclusion of false down payments;

   b.  It falsely and deceptively told Plaintiff she could return in six months and trade the Impala in for an AWD or 4WD vehicle when it knew that the Impala's value was reduced due to its former rental history and the frame damage;

   c.  It failed to disclose on the Purchase Order that the Impala was a former rental vehicle;

   d.  It failed to disclose the prior frame/unibody damage to the Impala;

   e.  It refused to cancel the sale of the Impala and refund the amounts paid to Plaintiff and instead sold Plaintiff a new vehicle, the Murano, for more than the advertised price;

   f.  It sold the Murano for more than the advertised price;

   g.  It powerbooked the Murano in order to entice Santander into lending money;

    h.  It falsely and deceptively told Plaintiff she could return in six months to refinance the Murano in order to lower the monthly payments; and

    i.  Its violations of TILA as aforedescribed.

54.  Apple Auto's conduct, as aforedescribed, was deceptive and unfair and in violation of CUTPA, and it has caused Plaintiff to suffer ascertainable losses and damages in that she paid a higher sales tax charge for both vehicles, she paid more than the advertised price for the Murano, she purchased a vehicle she cannot afford, and she purchased vehicles at prices that are substantially greater than their value.

55.  Apple Auto is liable to Plaintiff for her damages plus punitive damages and a reasonable attorney's fee.

**Wherefore, Plaintiff claims,** statutory damages of $2,000; actual damages, common law punitive damages, punitive damages pursuant to Conn. Gen. Stat. § 42-110g(g), and attorney's fees.

Plaintiff demands a trial by jury.

PLAINTIFF, RENEE COLEMAN

By: /s/ *Daniel S. Blinn*
   Daniel S. Blinn (ct02188)
   dblinn@consumerlawgroup.com
   Consumer Law Group, LLC
   35 Cold Spring Rd. Suite 512
   Rocky Hill, CT  06067
   Tel. (860) 571-0408
   Fax (860) 571-7457